*Under Seal ! Private.*

5:26-cv-1951

RECEIVED
U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA

JUN 0 8 2026

DANIEL J. McCOY, CLERK

IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF LOUISIANA SHREVEPORT DIVISION

HUNTER BOULWARE, Plaintiff, Pro Se, v. JUSTIN JACKSON, Defendant.

CIVIL ACTION NO. [To Be Assigned] JUDGE [To Be Assigned] MAGISTRATE JUDGE [To Be Assigned], if not under the same judges pertaining to active case

FILED UNDER SEAL

PLAINTIFF'S COMPLAINT FOR DAMAGES AGAINST JUSTIN JACKSON

PRELIMINARY PRAYER FOR RELIEF

WHEREFORE, at the outset of this Complaint, Plaintiff Hunter Boulware respectfully requests that this Court enter judgment against Defendant Justin Jackson for Compensatory and Punitive Damages arising from Defamation, Defamation Per Se, Tortious Interference with a Business Relationship, and Intentional Infliction of Emotional Distress. Plaintiff requests that this Court vindicate his reputation, order a total retraction of the false statements compiled by Defendant, and grant all appropriate monetary and equitable relief, including a specific judgment of $150,000.00, subject to conditional diminishment as detailed herein. A comprehensive Prayer for Relief follows at the conclusion of this pleading.

I. NATURE OF THE ACTION

1. This is a civil action for substantial monetary damages and equitable relief arising from a targeted, malicious, and calculated campaign of defamation executed by Defendant Justin Jackson. Defendant did not merely express an opinion or report an ambiguous encounter; instead, he authored a highly descriptive, fabricated three-page written narrative filled with malicious falsehoods, which he intentionally injected into the corporate infrastructure of Plaintiff's employer, Walmart. What is more is this is NOT Justin Jackson's first time to have done this. Justin Jackson terminated me from the ENTIRE company Walgreens for usage of 12 vulgar words while inside of a meeting for which Plaintiff NEVER should have been a part of, as Plaintiff was issued a first yet final written reprimand for 12 vulgar words for an act of kindness to another coworker; a termination from not just that location, but the ENTIRE company! Justin Jackson is one extremely dishonest man, and Jackson is the SOLE reason Walgreens was litigated against.

2. Defendant's three-page document was designed with a single, clear objective: to permanently destroy Plaintiff's employment, devastate his professional reputation as a pharmacy technician, and inflict severe emotional trauma. By converting fabricated gossip, distorted history, and outright lies into a formal corporate security and HR

Hunter Boulware
8501 Millicent Way, Apt 1116, Bldg. 18
Shreveport, LA 71115
318-455-1435
Currently no reliable email

complaint, Defendant successfully induced Plaintiff's employer to terminate his employment and publish highly stigmatizing labels to state administrative bodies.

3. This specific version of the complaint is filed under seal because it recites the exact, salacious, and highly damaging falsehoods manufactured by Defendant, which involve sensitive personal matters, alleged internal corporate investigation details, and references to non-parties that should not be disseminated publicly during the initial stages of this litigation.

## II. JURISDICTION AND VENUE

4. This Court has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because the dispute is between citizens of different states (or involves a matter properly brought in federal court) and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs. Alternatively, this Court possesses supplemental jurisdiction under 28 U.S.C. § 1367 because these claims are intimately tied to the operative facts, timelines, and evidentiary elements of ongoing federal employment and civil rights litigation pending before this Court.

5. Venue is proper in the Western District of Louisiana, Shreveport Division, pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claims, including the delivery of the defamatory document, the destruction of the employment relationship, and the resulting severe emotional and economic harm, occurred within this judicial district.

## III. PARTIES

6. Plaintiff Hunter Boulware is an adult individual residing in Shreveport, Louisiana, and is a licensed Pharmacy Technician appearing in this matter pro se.

7. Defendant Justin Jackson is an adult individual who, at all times relevant, acted in his personal capacity to inject defamatory material into Plaintiff's workplace within this District. Crucially, Defendant Jackson was not a random retail patron acting without context; he was the direct supervisor and manager at Plaintiff's prior workplace (Walgreens) and serves as the central nexus of a previous dispute and ongoing protected civil rights complaints asserted by Plaintiff.

## IV. THE LEGAL DOCTRINE OF DEFAMATION AND ITS APPLICATION

8. Under long-standing tort law, a statement is defamatory if it tends to harm the reputation of another so as to lower him in the estimation of the community or to deter third persons from associating or dealing with him. Defamation consists of: (a) a false and defamatory statement concerning another; (b) an unprivileged publication to a third party; (c) fault amounting at least to negligence on the part of the publisher, or actual malice; and (d) injury to the plaintiff.

Hunter Boulware
8501 Millicent Way, Apt 1116, Bldg. 18
Shreveport, LA 71115
318-455-1435
Currently no reliable email

9. When a defamatory statement falsely accuses an individual of committing a crime, possessing a loathsome disease, or engaging in conduct completely incompatible with the proper conduct of his lawful business, trade, or profession, the law recognizes the statement as Defamation Per Se. In cases of defamation per se, the law presumes that the plaintiff's reputation has been impaired, and injury to reputation is established as a matter of law without requiring specific proof of special damages.

10. Furthermore, the law recognizes the doctrine of Defamation by Implication. Even if a statement is literally true or contains fragments of historical fact, it becomes tortious if it intentionally omits critical, exculpatory context, thereby manipulating the reader into drawing a highly damaging, false conclusion.

11. Finally, where a non-employer third party enters a business environment and publishes false statements to corporate decision-makers, any claim of an investigative or qualified privilege is entirely destroyed if the publisher acted with actual malice—meaning they knew the statements were false or acted with a reckless disregard for whether they were true or false.

## V. FACTUAL ALLEGATIONS: THE THREE-PAGE FABRICATED HIT-PIECE

12. On July 13, 2024, Plaintiff was performing his duties as a Pharmacy Technician when he observed Defendant Justin Jackson inside the retail location. Plaintiff offered a polite, standard greeting, stating "Hey, Justin," or a substantially similar phrase.

13. Defendant Jackson responded with unprovoked, extreme hostility, stating "Fuck off," and explicitly threatened Plaintiff, stating in substance that he would ensure Plaintiff was fired from this job just as he had been from his prior employment. An audio recording of this interaction conclusively proves that Defendant was the sole aggressive actor and possessed an explicit, immediate motive to cause Plaintiff economic and professional ruin.

14. Immediately following this encounter, and in direct execution of his threat, Defendant Jackson drafted, compiled, and delivered a formal three-page written narrative to Plaintiff's corporate employer, routing it through human resources and management channels.

15. This three-page document was not a neutral report of a simple retail interaction. Instead, Defendant utilized his position as Plaintiff's former manager to craft a fraudulent historical profile designed to trigger immediate corporate panic and security escalation.

16. The Active-Shooter and Safety Fabrication: In the three-page document, Defendant explicitly claimed that Plaintiff posed an active security threat, insinuating or stating directly that Plaintiff represented an active-shooter risk or physical danger to retail staff and corporate locations. Plaintiff unequivocally denies this; it was a malicious fabrication intended to cause immediate suspension.

17. The Vehicle-Tracking Fabrication and Omitted Context: Within the three-page hit-piece, Defendant wrote: "Hunter is a textbook defined [stalker]...some employees felt as if Hunter had placed trackers on their cars as he admitted to doing so to ⬛'s and other

Hunter Boulware
8501 Millicent Way, Apt 1116, Bldg. 18
Shreveport, LA 71115
318-455-1435
Currently no reliable email

G7 F'o

people, he wanted to keep track of." Plaintiff has never placed tracking devices on coworkers' or any other individuals' vehicles. A personal relationship does not make one a stalker. Defendant's narrative regarding GPS usage deliberately distorts an event from 2022 at Walgreens. At that time, Defendant Jackson discovered a print screen from Bing Maps on Plaintiff's phone. This image had absolutely nothing to do with Plaintiff pursuing individuals from work. Rather, Plaintiff was looking for a specific individual in 2022 and harbored severe fears regarding HIV and other incurable STDs/STIs.

a. The specific individual Defendant asserts Plaintiff "stalked" Suwetha, who lived with Plaintiff for a long time. Suwetha had confided in Plaintiff that she used to be a prostitute while in Dallas. Her knowledge of Plaintiff being aware of her whereabouts was fully known to her, and she was certainly not frightened of Plaintiff.

b. Plaintiff regularly spoke to Suwetha's father and sincerely intended to marry her. Plaintiff never disclosed Suwetha's history or medical information to Defendant Justin or Ryan, because she would have likely cried over others knowing her personal business while she was with Plaintiff. Suwetha struggled with mental health issues; she would speak to herself, which Plaintiff initially suspected was continued methamphetamine usage, but it was likely schizophrenia—something she could not control. She was not a "tramp from the street"; she came from a well-off Indian family and has a brother who is an anesthesiologist.

c. Ultimately, Plaintiff asked Suwetha to live with her father because Plaintiff was writing numerous legal papers and litigating against Walgreens. Plaintiff focused almost exclusively on attempting to litigate against Walgreens, ignoring Suwetha's need to communicate with him, even though Plaintiff wanted to communicate with her. Given the rigorous timelines under the FRCP, Plaintiff's distraction caused by Defendant's actions means Plaintiff will likely not have the opportunity to have a relationship with her now, as she is currently with someone else, despite Plaintiff's sincere desire to marry her.

d. Furthermore, a coworker named Samantha was only told about the GPS/mapping application because she explicitly asked Plaintiff why he was looking at his phone as much as he was. This was a direct response to a question, not an unprompted admission of predatory tracking.

18. The "Gish Gallop" and Unprivileged Repetition: Defendant employed a "Gish gallop" technique within the document—weaponizing a rapid-fire mixture of invited truths, distorted history, and outright lies to overwhelm the reader. Defendant maliciously repeated falsehoods and baseless interpretations originating from another individual, Ryan Himes, as well as false claims derived from a Walgreens Louisiana Workforce Commission (LWC) file. Just because there existed a historical basis for Defendant to have discussed these statements in the past (via the LWC file or Ryan Himes' false claims), it did not give Defendant the legal right to maliciously inject these falsehoods into Walmart. Repeating Ryan Himes' lies to Walmart is legally indistinguishable from a

Hunter Boulware
8501 Millicent Way, Apt 1116, Bldg. 18
Shreveport, LA 71115
318-455-1435
Currently no reliable email

former employer accusing an employee of theft based solely on a baseless comment from a third party, where actual evidence is completely absent. Furthermore, Defendant's lies are so pervasive that it is highly likely Defendant's upstairs neighbor was wholly influenced by these same fabrications.

19. The HIPAA and System-Misuse Fabrication: Defendant asserted in the document: "because when the script was given to Hunter 'they' feel he took the name and info from the script used it in Facebook to friend the girls and find places she would go to often..." Defendant used the qualifying word "unofficially" to couch this claim, but the legal effect was a direct accusation that Plaintiff committed federal HIPAA violations and corporate data misuse. Plaintiff has never used pharmacy systems to hunt or look up individuals for social engineering.

20. The Fabricated "Donut Incident" and Fat-Shaming Lie: Defendant wrote to corporate HR that Plaintiff "was being given a final written warning for harassment [for] 'fat-shaming' another employee after telling her she was too fat for any man to want to fuck her." This statement is an outright fabrication. The historical incident referenced involved a completely benign offer of donut holes to a close friend and coworker, and contemporaneous audio evidence proves that Plaintiff never uttered those vulgar words. *the term.* Defendant repeated and amplified this fabrication to brand Plaintiff as a severe, toxic workplace harasser.

21. The Nude Photo Distortion (Defamation by Implication): Defendant's three-page narrative claimed that Plaintiff provided an unsolicited nude photograph to a coworker. This claim constitutes severe defamation by implication because Defendant intentionally omitted the critical, exculpatory context that the coworker in question was an extremely close personal friend of five years with whom Plaintiff shared an intimate relationship outside of work, and that the exchange of personal photographs was entirely mutual, consensual, and detached from any workplace misconduct. By stripping this context, Defendant framed a private, consensual relationship as an act of workplace sexual harassment.

22. The Fabricated 100-Mile Relocation Claim: Defendant claimed in his document that he was forced to transfer his employment 100 miles away (to Ruston) to escape harassment or intimidation by Plaintiff. This is functionally and chronologically false; Defendant's professional relocation was driven by standard corporate operations and personal advancement, not by flight from Plaintiff. *or some other reason.*

23. Defendant Jackson was fully aware that corporate entities are governed by strict risk-management protocols. He deliberately calculated that by flooding Plaintiff's employer with rapid-fire accusations of stalking, electronic tracking, active-shooter risk, and HIPAA violations, he would subject the employer to "cognitive priming." Defendant knew the employer's investigators would be primed to interpret any future, ordinary, or ambiguous event through a highly skeptical and panicked lens, thereby ensuring Plaintiff's termination.

24. As a direct and proximate result of Defendant Jackson's three-page document, Plaintiff's employer suspended and ultimately terminated Plaintiff from his position, citing the

Hunter Boulware
8501 Millicent Way, Apt 1116, Bldg. 18
Shreveport, LA 71115
318-455-1435
Currently no reliable email

"substantiated" narrative that originated entirely from Defendant's pen. Furthermore, these false conclusions were published to the Louisiana Workforce Commission, destroying Plaintiff's ability to secure immediate employment within his licensed profession.

## VI. CLAIMS FOR RELIEF

### COUNT I: DEFAMATION AND DEFAMATION PER SE

25. Plaintiff incorporates all preceding paragraphs as though fully set forth herein.
26. Defendant Jackson authored and published a written three-page document to third parties containing explicit, objective statements of fact concerning Plaintiff that were entirely false.
27. These statements accused Plaintiff of committing crimes (illegal tracking, stalking), violating federal privacy statutes (HIPAA), and engaging in egregious moral turpitude completely incompatible with his profession as a licensed healthcare worker. Therefore, these statements constitute defamation per se.
28. Defendant acted with actual malice, personal animus, and a reckless disregard for the truth, having manufactured these claims immediately after threatening to get Plaintiff fired.
29. As a direct result, Plaintiff suffered permanent injury to his professional reputation, loss of his licensed livelihood, severe humiliation, and a total disqualification from his chosen career path.

### COUNT II: TORTIOUS INTERFERENCE WITH A BUSINESS RELATIONSHIP

30. Plaintiff incorporates all preceding paragraphs as though fully set forth herein.
31. Plaintiff maintained a valid, productive, and economically viable employment relationship with his employer, Walmart, as a Pharmacy Technician.
32. Defendant Jackson had full knowledge of this employment relationship and explicitly targeted it during the July 13, 2024 encounter.
33. Defendant engaged in an unjustified, malicious, and tortious disruption of that relationship by submitting a fabricated three-page hit-piece to human resources, using lies to force corporate termination.
34. Defendant's interference was completely successful, resulting in the immediate destruction of Plaintiff's employment contract, loss of regular income, and substantial financial damages.

### COUNT III: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

35. Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

Hunter Boulware
8501 Millicent Way, Apt 1116, Bldg. 18
Shreveport, LA 71115
318-455-1435
Currently no reliable email

36. Defendant Jackson's conduct in weaponizing his former managerial status to fabricate a detailed, multi-layered profile branding Plaintiff as an active shooter, a predatory tracker, and a federal privacy violator crosses all bounds of decent human behavior.

37. Defendant acted with the specific intent to inflict severe emotional trauma and professional execution, or acted with total disregard for the devastating psychological impact such claims would have on a dedicated professional.

38. As a direct consequence, Plaintiff has suffered extreme emotional distress, acute anxiety, sleeplessness, and the profound trauma associated with the destruction of his livelihood and personal reputation.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Hunter Boulware respectfully requests that this Court enter judgment in his favor and against Defendant Justin Jackson, granting the following relief:

A. Compensatory Damages: Awarding Plaintiff $150,000.00 for lost wages, lost future earning capacity, and permanent injury to his professional standing as a Pharmacy Technician. The total damages assessed against Defendant Jackson may be diminished provided that Defendant Jackson actively and successfully assists Plaintiff in attaining employment again at both of his previous employers, Walgreens and Walmart.

B. Special and General Damages: Awarding substantial damages for severe emotional distress, mental anguish, public humiliation, and professional isolation caused by Defendant's malicious writing.

C. Punitive Damages: Awarding punitive and exemplary damages to punish Defendant's calculated, bad-faith abuse of corporate reporting systems and to deter such malicious behavior in the future.

D. Equitable Relief: An order requiring Defendant Justin Jackson to execute a full, written retraction of all claims contained in the three-page document, to be delivered to Plaintiff's former employer and the Louisiana Workforce Commission.

E. Costs and Fees: Awarding pre-judgment and post-judgment interest, all court costs, and any further relief that this Court deems just, equitable, and proper.

## BENCH TRIAL DEMAND

Plaintiff demands a trial by bench trial on all issues so triable.

RESPECTFULLY SUBMITTED this _6th_ day of _June_ , 2026.

Hunter Boulware
8501 Millicent Way, Apt 1116, Bldg. 18
Shreveport, LA 71115
318-455-1435
Currently no reliable email

Hunter Boulware, Pro Se 8501 Millicent Way, Apt. 1116 Shreveport, LA 71115 Phone: 318-455-1435

IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF LOUISIANA SHREVEPORT DIVISION

HUNTER BOULWARE, Plaintiff, Pro Se, v. JUSTIN JACKSON, Defendant.

CIVIL ACTION NO. [To Be Assigned] JUDGE [To Be Assigned] MAGISTRATE JUDGE [To Be Assigned]

PUBLIC REDACTED COMPLAINT FOR DAMAGES AGAINST JUSTIN JACKSON

PRELIMINARY PRAYER FOR RELIEF

WHEREFORE, at the outset of this Complaint, Plaintiff Hunter Boulware respectfully requests that this Court enter judgment against Defendant Justin Jackson for Compensatory and Punitive Damages arising from Defamation, Defamation Per Se, Tortious Interference with a Business Relationship, and Intentional Infliction of Emotional Distress. A comprehensive Prayer for Relief, including a specific demand for $150,000.00 subject to conditional diminishment, follows at the conclusion of this pleading.

## I. NATURE OF THE ACTION

1. This is a civil action for substantial monetary damages and equitable relief arising from a targeted, malicious, and calculated campaign of defamation executed by Defendant Justin Jackson. Defendant did not merely express a personal opinion; instead, he authored a highly descriptive, fabricated three-page written narrative filled with malicious falsehoods, which he intentionally injected into the corporate infrastructure of Plaintiff's employer, Walmart. Jackson is the SOLE reason previous litigation against Walgreens occurred.

2. Defendant's three-page document was designed with a single, clear objective: to permanently destroy Plaintiff's employment, devastate his professional reputation as a pharmacy technician, and inflict severe emotional trauma. By converting fabricated claims into a formal corporate security and HR complaint, Defendant successfully induced Plaintiff's employer to terminate his employment.

3. This public version of the complaint omits or redacts the specific, highly salacious text of the falsehoods compiled by Defendant to respect privacy standards and preserve the integrity of the contemporaneous sealed filing, while fully setting forth the operative legal claims against Defendant Jackson alone.

## II. JURISDICTION AND VENUE
Hunter Boulware
8501 Millicent Way, Apt 1116, Bldg. 18
Shreveport, LA 71115
318-455-1435
Currently no reliable email

4. This Court has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because the dispute is between citizens of different states and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs. Alternatively, this Court possesses supplemental jurisdiction under 28 U.S.C. § 1367 because these claims are intimately tied to the operative facts of ongoing litigation pending before this Court.

5. Venue is proper in the Western District of Louisiana, Shreveport Division, pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claims, including the delivery of the defamatory document and the resulting severe economic harm, occurred within this judicial district.

## III. PARTIES

6. Plaintiff Hunter Boulware is an adult individual residing in Shreveport, Louisiana, and is a licensed Pharmacy Technician appearing in this matter pro se.

7. Defendant Justin Jackson is an individual whose defamatory actions occurred within this District. Crucially, Defendant Jackson was not a random retail patron acting without context; he was a manager at Plaintiff's prior workplace and serves as the central nexus of a previous dispute and ongoing protected civil rights complaints asserted by Plaintiff.

## IV. THE LEGAL DOCTRINE OF DEFAMATION AND ITS APPLICATION

8. Under established tort law, a statement is defamatory if it tends to harm the reputation of another so as to lower him in the estimation of the community or to deter third persons from associating or dealing with him. Defamation consists of: (a) a false and defamatory statement concerning another; (b) an unprivileged publication to a third party; (c) fault amounting at least to negligence on the part of the publisher, or actual malice; and (d) injury to the plaintiff.

9. When a defamatory statement falsely accuses an individual of committing a crime or engaging in conduct completely incompatible with the proper conduct of his lawful business, trade, or profession, the law recognizes the statement as Defamation Per Se. In cases of defamation per se, the law presumes that the plaintiff's reputation has been impaired, and injury to reputation is established as a matter of law without requiring specific proof of special damages.

10. The law further recognizes Defamation by Implication. Even if a statement contains fragments of historical fact, it becomes tortious if it intentionally omits critical, exculpatory context, thereby manipulating the reader into drawing a highly damaging, false conclusion.

11. Finally, where a non-employer third party enters a business environment and publishes false statements to corporate decision-makers, any claim of privilege is entirely destroyed if the publisher acted with actual malice—meaning they knew the statements were false or acted with a reckless disregard for whether they were true or false.

Hunter Boulware
8501 Millicent Way, Apt 1116, Bldg. 18
Shreveport, LA 71115
318-455-1435
Currently no reliable email

## V. FACTUAL ALLEGATIONS: THE THREE-PAGE FABRICATED HIT-PIECE

12. On July 13, 2024, Plaintiff was performing his duties as a Pharmacy Technician when he observed Defendant Justin Jackson inside the retail location. Plaintiff offered a polite, standard greeting.

13. Defendant Jackson responded with unprovoked, extreme hostility and explicitly threatened Plaintiff, stating in substance that he would ensure Plaintiff was fired from his current job. An audio recording of this interaction conclusively proves that Defendant was the sole aggressive actor and possessed an explicit, immediate motive to cause Plaintiff economic and professional ruin.

14. Immediately following this encounter, and in direct execution of his threat, Defendant Jackson drafted, compiled, and delivered a formal three-page written narrative to Plaintiff's corporate employer, routing it through human resources and management channels.

15. This three-page document was a targeted "hit-piece" consisting of fabricated claims and severe distortions of truth regarding Plaintiff's adherence to federal privacy standards, workplace conduct, safety risk, and historical interactions with third parties.

16. [REDACTED/SPECIFIC LIES SUBMITTED UNDER SEAL]: As detailed in the contemporaneous sealed pleading, the three-page document written by Defendant Jackson contained explicit, fabricated accusations asserting that Plaintiff represented an active security/safety risk, utilized advanced electronic tracking devices on individuals' vehicles, misused confidential pharmacy data to engage in social media tracking in violation of federal privacy standards (HIPAA), and engaged in severe, unsolicited workplace harassment.

17. Defendant intentionally stripped these historical references of all exculpatory context—including the fact that prior interactions with historical coworkers involved long-standing, mutually consensual, and close personal friendships outside of the workplace—in order to frame private, benign relations as predatory workplace misconduct (Defamation by Implication). Furthermore, Defendant omitted that innocent explanations regarding phone usage were provided to coworkers (such as Samantha) only upon direct inquiry, twisting these interactions into admissions of stalking. A personal relationship does not equate to stalking, and Plaintiff has never placed tracking devices on other individuals' vehicles. (Further specific context regarding these interactions and the 2022 discovery of GPS/mapping data is detailed entirely within the sealed version of this complaint to protect the severe privacy interests of non-parties).

18. The "Gish Gallop" and Unprivileged Repetition: Defendant Jackson employed a "Gish gallop" technique—overwhelming Plaintiff's employer with a rapid-fire mixture of fragmented truths, distorted history, and outright lies. Defendant maliciously repeated falsehoods and baseless interpretations originating from third parties, including Ryan Himes, and weaponized information from a prior Louisiana Workforce Commission (LWC) file. Having a historical basis or access to a past LWC file did not grant Defendant the right to maliciously publish these falsehoods to Plaintiff's subsequent

Hunter Boulware
8501 Millicent Way, Apt 1116, Bldg. 18
Shreveport, LA 71115
318-455-1435
Currently no reliable email

employer, Walmart. Repeating these falsehoods is legally indistinguishable from an employer accusing a worker of theft based entirely on a baseless rumor from a third party where evidence is wholly absent. The defamatory campaign was so extensive that it likely influenced third parties outside the workplace, including Defendant's upstairs neighbor.

19. Defendant Jackson was fully aware that corporate entities are governed by strict risk-management protocols. He deliberately calculated that by flooding Plaintiff's employer with rapid-fire accusations of stalking, electronic tracking, security risks, and privacy violations, he would subject the employer to "cognitive priming," ensuring they would interpret any future, ordinary event as a termination-level offense.

20. As a direct and proximate result of Defendant Jackson's written three-page document, Plaintiff's employer suspended and ultimately terminated Plaintiff from his position, citing a narrative that originated entirely from Defendant's fabricated complaints.

## VI. CLAIMS FOR RELIEF

### COUNT I: DEFAMATION AND DEFAMATION PER SE

21. Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

22. Defendant Jackson authored and published a written three-page document to third parties containing explicit, objective statements of fact concerning Plaintiff that were entirely false.

23. These statements accused Plaintiff of criminal-type conduct, statutory privacy violations, and conduct completely incompatible with his profession as a licensed healthcare worker. Therefore, these statements constitute defamation per se.

24. Defendant acted with actual malice, personal animus, and a reckless disregard for the truth, having manufactured these claims immediately after threatening to get Plaintiff fired.

25. As a direct result, Plaintiff suffered permanent injury to his professional reputation, loss of his licensed livelihood, severe humiliation, and professional isolation.

### COUNT II: TORTIOUS INTERFERENCE WITH A BUSINESS RELATIONSHIP

26. Plaintiff incorporates all preceding paragraphs as though fully set forth herein.

27. Plaintiff maintained a valid, productive, and economically viable employment relationship with his employer, Walmart.

28. Defendant Jackson had full knowledge of this employment relationship and explicitly targeted it during the July 13, 2024 encounter.

29. Defendant engaged in an unjustified, malicious, and tortious disruption of that relationship by submitting a fabricated three-page hit-piece to human resources, using lies to force corporate termination.

Hunter Boulware
8501 Millicent Way, Apt 1116, Bldg. 18
Shreveport, LA 71115
318-455-1435
Currently no reliable email

30. Defendant's interference was completely successful, resulting in the immediate destruction of Plaintiff's employment relationship and substantial financial damages.

## COUNT III: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

31. Plaintiff incorporates all preceding paragraphs as though fully set forth herein.
32. Defendant Jackson's conduct in weaponizing fabricated, descriptive profiles branding Plaintiff as a dangerous security risk and a severe privacy violator crosses all bounds of decent human behavior.
33. Defendant acted with the specific intent to inflict severe emotional trauma and professional execution, or acted with total disregard for the devastating impact such claims would have on a dedicated professional.
34. As a direct consequence, Plaintiff has suffered extreme emotional distress, acute anxiety, and the profound trauma associated with the destruction of his livelihood and personal reputation. ~~Count IV:~~ Trespass to Chattels (if conclusively proven true):

"phone entry" after termination.

## VII. PRAYER FOR RELIEF

Count V: General Damages / Special Damages

WHEREFORE, Plaintiff Hunter Boulware respectfully requests that this Court enter judgment in his favor and against Defendant Justin Jackson, granting the following relief:

A. Compensatory Damages: Awarding Plaintiff $150,000.00 for lost wages, lost future earning capacity, and permanent injury to his professional standing as a Pharmacy Technician. The total damages assessed against Defendant Jackson may be diminished provided that Defendant Jackson actively and successfully assists Plaintiff in attaining employment again at both of his previous employers, Walgreens and Walmart.

B. Special and General Damages: Awarding substantial damages for severe emotional distress, mental anguish, public humiliation, and professional isolation caused by Defendant's malicious writing.

C. Punitive Damages: Awarding punitive and exemplary damages to punish Defendant's calculated, bad-faith abuse of corporate reporting systems.

D. Equitable Relief: An order requiring Defendant Justin Jackson to execute a full, written retraction of all claims contained in the three-page document, to be delivered to Plaintiff's former employer and the Louisiana Workforce Commission.

E. Costs and Fees: Awarding pre-judgment and post-judgment interest, all court costs, and any further relief that this Court deems just, equitable, and proper.

"General & Special Damages" against Jackson.

Hunter Boulware
8501 Millicent Way, Apt 1116, Bldg. 18
Shreveport, LA 71115
318-455-1435
Currently no reliable email

BENCH TRIAL DEMAND

Plaintiff demands a trial by bench trial on all issues so triable.

RESPECTFULLY SUBMITTED this 6th day of June , 2026.

Hunter Boulware, Pro Se 8501 Millicent Way, Apt. 1116 Shreveport, LA 71115 Phone: 318-455-1435

Hunter Boulware
8501 Millicent Way, Apt 1116, Bldg. 18
Shreveport, LA 71115
318-455-1435
Currently no reliable email